Good morning. If it may please the court and Judge Berzon, I represent the appellant Luke Kirk and I do request three minutes be reserved for rebuttal. You may do that, but you need to watch the time. Thank you, then. And I will share with you that the timer is not coming up on my screen, so I will do that. Well, let's stop then for a minute. Isn't the timer supposed to be Does everyone not see the timer right now? I see it. Okay, Ms. Snyder, I believe you might need to click the button that says gallery view. Well, that is exactly the problem. Thank you so much. Okay. I've got so many Zoom meetings, but I think I'm a little unnerved in this environment. Thanks. Okay. Thank you very much. On behalf of the appellant Luke Kirk, we are presenting you actually with what in many respects is a very simple issue. The trial court dismissed Mr. Kirk's claim against the United States, a claim of professional negligence arising as a result of his inappropriate dual relationship created by his therapist at the VA, Ms. Phillips. The trial court found that under the theories of respondent superior for vicarious liability, there were clear issues of fact as to the first two components of the theory of vicarious liability, but the court found that summary judgment was appropriate because the employee engaged in a personal relationship with her client that was not of the kind she was employed to perform. Although you're analyzing this under Oregon law, as the parties have pointed out, there's also a case out of the Ninth Circuit, Doe versus Holy See, which actually Judge Berzon was on the panel, which also looked at this issue and looked at the cases out of Oregon, which for purposes of our discussion, I think we'll spend most of our time talking about the fearing decision and the menace decision. So let me bring it to what I'm going to suggest is the conclusion of my presentation and why I urge you to reverse the grant of summary judgment. The issue is whether there is an issue of fact as to whether the professional negligence of the therapist should be attributed to the government. And if this were any other kind of professional negligence case, like a surgery gone bad at the VA, we would not even be having this discussion. But the reason we're having this discussion is because the dual relationship that Ms. Phillips fostered in therapy with Mr. Kirk oozed over into a relationship outside of the offices of the VA. So let's stop right there for just a moment. It is very clear from the complaint that this allegation of dual relationship arises out of the therapeutic relationship. And we have alleged numerous examples of within the therapeutic relationship that gives rise to the claim of professional negligence. There was cuddling, there was touching, Ms. Phillips put her legs over Mr. Kirk, Ms. Thyme. I'm hearing Thyme from... Yes, what's that? Judge Collins is muted. You're muted, first of all, I can't hear you. Okay, can you hear me now? Yes, Judge Collins. Okay, there was a mute symbol on here that did not originate with my controls, and that was preventing me from being heard. I'm sorry. Apparently, I assume it was in the courtroom in Portland and has now been removed. Okay. I have a question. And that is, you know, the line of cases Fearing and Doe versus Holy See and Minnis all say that they describe the test for responding at superior in the context of intentional torts, which is the one thing that we know cannot be asserted under the FTCA against the government. So why doesn't that just say that that whole line of authority is irrelevant and set aside? With all due respect to the court, I'm going to suggest that that's too narrow of an It's very clear that what they were doing in those cases was looking at the third prong of the vicarious liability test and applying it when there was something more, and that something more was intentional conduct, specifically sexual assault claim that had been filed against the employer. But if you look at the analysis as to how they came to the conclusion that, in fact, there was vicarious liability, it's perfectly applicable to a negligence claim, which is Chesterman itself was an intention. Judge Breslin, I'm so sorry, you cut off. I could not Chesterman itself was an intention for it, was it not? Yes, Chesterman arose out of conduct of the employee who went to Bowerman's, for services, and that was an intentional tort. Correct. And it essentially dealt with a very parallel problem. It wasn't in the sexual harassment, but it was in the context of something that began within the scope of the employment and then resulted in the scope of the employment. Yes. Or not, that wouldn't itself have been in this problem. And fearing then relies on Chesterman almost exclusively. So, I mean, I'm not entirely convinced that there really are two different things as opposed to the application of Chesterman to the intentional tort situation as an example. I'm wondering, I have been comfortable with the notion that Oregon has two rules as opposed to an explication of how the first rule applies in the second situation. Do you accept that there are two rules or that there's one rule that in the intentional, in the sexual harassment or assault situation has been explained more specifically? I am consistent with the latter, that there's one rule and we have the three-prong test and the sole question is, how do we get to the third prong if the employee has also engaged in intentional misconduct? And I think we would all agree that the standard for intentional misconduct is in and of itself higher than negligence. But most significantly, this is not misconduct case. For vicarious liability. For vicarious liability. Where is liable less frequently. Correct. And I'm so sorry, Judge Berzon, you are cutting in and off, but if you stop. That's funny because yesterday it was working. Go ahead. Okay. So, thank you for mentioning that because I think that's really the crux of the issue that the court is going to have to resolve for us. Is it even conceivable that in a workplace environment where there is substantial evidence of inappropriate professional interactions with Mr. Kirk within the workplace? And that is outlined at length in Judge Hernandez's opinion and of course ad nauseum in the briefing. Is it conceivable that because of this significant workplace misconduct that the entire claim itself must be dismissed because there also was conduct occurring outside of the workplace? Therefore, the government would have you come to the conclusion that there is no liability. And we purposely pled a claim of professional negligence. Primarily arising from the fact that Ms. Phillips did was inappropriate under any standard and the government has not challenged that. The government has not challenged whether there was a violation of the standard of care. They are simply challenging the question of whether the government may be held viable. I don't want. One question is. Yes. And that here the district court dismissed. One possibility, of course, is that some of this activity, namely the activity during the therapy sessions, and maybe some of the activity with regard to the text messages that discuss the therapy relationship are is actionable and that specifically the incident at the end, which seemed to be maybe the main thing that you're trying to sue over. So there there is the possibility that this is not a single answer. Do you agree with that? I can understand why that is a possibility. I would suggest it to be analyzed in a different perspective, which is, is it a jury question? Is it a question for the jury to decide what conduct was within the course and scope of employment or arose as a result of that employment relationship and the professional negligence, the dual relationship? And if so, what damage flowed from that dual relationship? And I fully expect at trial, the government will argue there was no professional purpose for them to make that trip to the beach, therefore not award any damages for that. But that is something that is a classic question that's presented to the jury. Counsel, with respect to the Harkness case, in that case, didn't the Oregon court apply the traditional Chesterman test in the professional negligence context? How do you respond to that? Um, I don't think that there's any inconsistency in my position in suggesting we apply the Chesterman approach to the current situation. Rather, the only issue is as it relates to the third prong of the test. Under these circumstances, is there sufficient pled evidence? And again, we do go back to the fleets. Is there sufficient evidence pled to suggest that there is a responsibility by the employer for all of the misconduct that occurred? And to that extent, if you go back to our complaint, you will see that we have alleged that there was in fact a conduct that arose as a result of this trusting relationship that they developed within therapy that Miss Phillips otherwise would not have had that for the fact that she was his therapist at the VA. Does that answer your question? Yes, thank you. I love hearing myself talk, but unless there's further questions, I will turn it over to counsel for the government. Thank you. Thank you very much, Ms. Snyder. Mr. Hager. May it please the court, Jared Hager for the United States. The VA did nothing wrong in this was unpredictable, unpreventable, and 100% unauthorized. She pursued a personal, secret, and sexual relationship with Mr. Kirk. And the moment the VA found out about it, the VA stopped it. Just a minute, please. Let's start with the activities that actually occurred at during the therapy sessions, which were part of her role as a therapist, their relationship as therapist and patient. And I gather the physical location were all part of the employment relationship and the VA. Is that right? That's right, Your Honor. Uh, and during that, those therapy sessions, there were things that happened that, uh, are part of what's being alleged to be, uh, a breach of professional responsibility. That's correct. So the time is why are those actionable? Why aren't those things that happened in within the official, physical, the situated therapy relationship, but were inappropriate as within professional responsibility? Why ever, why ever she was doing it? Actionable. It's not actionable because that was a misconduct. And Chester and minutes, say you have to look at the type of misconduct alleged that misconduct was not of a kind that the VA hired her to perform. So what happens if somebody is driving a car and drinking while they're driving and they're not supposed to be drinking when they're driving when you're driving, but they are drinking when they're driving and they had a car accident. Is the government responsible or is the employer responsible? Yes, because the drive is authorized. Because what? I'm sorry. The driving is right. And here the therapy session was authorized. The session was authorized, but the particular conduct wasn't. She, she, she was hired to driving while drunk wasn't even, but driving is in a more general sense. There's a clear distinction between professional and personal relationships as the district court found. And the district court's findings are reviewed for clear error in the scope of employment context. And that's important, you know, or maybe you don't that this was at the same dialogue was the original dialogue around having sexual harassment as a, um, an actionable cause of action at all. Uh, and that, that was the dispute for many years. And the net result was, uh, the conclusion was that the employer can be responsible for, uh, in certain circumstances. So the fact that, that what was being done was for the personal wasn't, wasn't authorized and, and was personal wasn't the answer in the end. Well, there's a federal statute on point there. And here we look at really what statute is that? It doesn't say anything about this. This was the result of many years of litigation under title seven as to vicarious liability, which isn't covered under title seven. Direct. I appreciate the analogy. And I take the point, your honor. I do want to answer your question about Chesterman. Holy see binds the district court, just as it binds this court. And it holds that there are two standards under Oregon law. And that is the Oregon Supreme court decision in minutes and Chester minutes. There are three elements under Chesterman. There are two under the alternative fearing test. And I believe that even if we accept that there are two standards and that maybe, um, he can't sue directly for intentional towards, why can't he still sue for what amounts in many aspects to bad therapy? He was supposed to get therapy from the VA. That's what she was authorized to do. And she did it quite badly. Why can't he sue under that theory for the acts that, uh, you know, and not on the therapy. And I urge you to look at the third standard carefully because it requires that the work be of a kind that Ms. Phillip as a G S 11 social worker was entitled or was authorized to perform. She was hired to perform. And the record before the district court was woefully inadequate. On that point, plaintiffs submitted three pages of evidence consisting solely of a There's no deposition of Ms. Phillips. There's no deposition of Ms. Phillip supervising. There's no deposition or evidence from an HR person from the VA who might, uh, testify or give some evidence as to what her job position, uh, would require. There's no evidence from an expert that might, uh, give you some guidance as to what a social worker. That seems to go more to whether there wasn't actually a breach of the duty of It's not. It is clear that she was hired to give therapy. And that if you look at these text messages, at least some of it seemed to be related to therapy. I mean, she says, I'm going to do this kind of therapy. And they talk about his father and they talk about his suicidal ideations and so on in the text messages. Um, that appears to be related to what she was hired to do. No, that's correct. And that therapy, such as connecting him to voc rehab, scheduling appointments, uh, connecting him to other services is the type of work she was hired to do. But that is not what the complaint says breaches her duty. What, if you look at the complaint, what breached her duty was fostering and engendering a personal relationship. Not only was she not authorized to do that, she was expressly forbidden to do that. And so In my hypothetical, the person was forbidden to drink while he was driving, but he didn't. I agree. It was also forbidden to speed, presumably don't speed. The surgery example that, um, Ms. Snyder provided, I think gives an illustration. If you go in for a consulectomy and the surgeon harvest your kidney and sells it for his own personal gain, that is not within the scope of employment that is under Oregon law. That is not the type of work that that surgeon was hired to perform. So if a cook makes you a meal and it's fine, but while he is serving you, the meal cuts off a finger purposely, that is not the type of work that that cook was hired to do. So I think I find that extremely unlikely that there's a finger in your, in your food. It matters whether he cut it off, uh, cause he was crazy or because it was negligent. Well, I, I think that for this court to reverse judge Hernandez, you have to look at the record that judge Hernandez and the arguments judge Hernandez was faced with Ms. Snyder and the plaintiff made zero. He has to be wrong, at least with regard to what was happening in the therapy room. Does he not? And I mean, if she was putting hands on him during therapy, um, during the therapy session and purportedly as part of the therapy, she's claimed it was part of the therapy that has to be actionable. Her claim isn't controlling of what the VA hired her to do. She was prosecuted for lying about what she was doing. She was prosecuted for official misconduct for exceeding the scope of her authority. She was indicted and she was fired for this inappropriate relationship. This is not of a kind that she was hired. In my hypothetical, the driver was fired for driving while drunk. That doesn't prove anything. Your honor, your theory would reduce Oregon's vicarious liability standard to the first element, that it's just time and space, time and space and harm. But Oregon is unique. It requires time and space. It requires service to the employer. And then third, it requires for a predictability purpose that this is the type of work we hired the employee to do. And that's important when you talk about negligence, because there's a standard of care that determined breach. But it was the type of work. She may have been doing it very badly. Let's stick to therapy session for now and maybe some of the text messages. That was the type of work she was hired to do. She was hired to give the guy therapy. Now, if she was doing it badly because she had different, her own personal motives, that's a very broad category. There are many reasons people do things bad. But that's what she was doing. She was doing the therapy badly. In Chesterman, the negligence was taking the mescaline. The intentional tort was decided by the Supreme Court to be absolutely outside the scope of employment, not the type of work that that employee was doing. But nonetheless, actionable because it was sufficiently related and caused by the activity, right? So that's why I'm not at all clear that fearing really is a different. Ordinarily, one would think that the standard for making an employer responsible for an intentional tort would be higher, not lower, right? Would you think that? I think that's usually the case. Isn't it usually the case that they're not responsible for intentional torts? It is the case. Right. Okay. So it seems very improbable that the Oregon Supreme Court was creating a new, forgiving test for all intentional torts. That can't be true. It's not a more forgiving test because you have to connect the scope activity with the natural engendering or the outgrowth of the harm. Now, it must be a more forgiving test because you're saying that applying here, it might result in vicarious liability, but the full traditional test doesn't. Well, and I wouldn't conceive that point. The Boy Scout troop leader and a pastor, they are hired to establish personal relationships with their clergy and their troops. That's exactly what happened. That is why that activity was a natural outgrowth and engendered by scope of work activity. How is being a physical therapist different then? How is being a therapist different? Aren't they hired to engender that same trust and level of connection with the patient? It's fiduciary, but it is a professional, more arm's length transaction. You're not going to their house for dinner like a pastor might come to your house and make friends with your parents. It's different in that regard. The social code, the code of ethics for social workers demands that you not touch your patient in the therapy room. It demands that you not act for your own personal gain or test for personal non-work related purposes. I just want to underline, the complaint does not say that the therapy, that the suicidal guidance she gave after hours, that the connection to voc rehab, the scheduling appointments, the complaint does not say that that work, that conduct within the scope was negligent. It says that the personal stuff was negligent. That is why this case is different. I don't think this panel needs to worry about establishing some precedent because the record that the presented here, all of three pages from the patient, nothing about the scope of work that Ms. Phillips was authorized to do is vocally inadequate and is not going to control some other case that makes this case far more like Campbell than Simmons. That applies to Washington law, but in Campbell, we had a motion for summary judgment decided for the government. In Simmons, we had a bench trial that was decided for the plaintiff and that posture makes this case extremely different. The judge is going to be the trier of fact. If you send this case back, we'll raise our other arguments about intentional torts and superseding causes and the lack of recoverability as Oregon has the physical impact rule. The judge is still going to be the trier of fact at the end of the day on whether or not this was the type of work Ms. Phillips was authorized to do. I submit that the case is dead on arrival if you send it back. I think that the record supports affirming here because not only did the district court apply the correct legal principles, but the district court also, taking the record that was presented to him, clearly found and I think properly found and correctly found that this was a personal, secret, and sexual relationship that was entirely not what she was authorized to do. Entirely not what the VA hired her to do. In fact, it was the opposite of that. I think that Judge Berzon, did I cut you off? I do have a question, but finish what you're saying. I'm finished. I don't want anything if I don't remember the question. Oh yes, it was. Are there any cases outside of Oregon under the FGCA or otherwise, but particularly under the FGCA with regard to activity of this kind? Not that I'm aware of. The set of 4,000 text messages over a two-month period, a month and a half. I'm talking more generally. Are there any other cases about psychologists and alleged sexual harassment or sexual or inappropriate sexual- Campbell and Simmons that apply Washington law, but none other than apply Oregon law. I do want to respond to Judge Choey-Graves' question about partners. We feel that that applies here. In that case, the loan officer not only was authorized to originate loans, but was also authorized to encourage their clients how to use the equity. That's why that conduct was the type of work that the loan officer was authorized to do, notwithstanding that they did it fraudulently. Very briefly, because your time is up, but I'd like to know. Do you think there's this clear difference between the two standards? Applying Chesterman and particularly keeping in mind the facts of Chesterman, why wouldn't this case come out the same way it would under Fearing? Chesterman turned on the fact that the employee was also the owner. When the owner employee decided to take those mescaline chocolates in order to increase productivity, the court found under that unique circumstance that there was a question of fact whether taking the mescaline to get the bid done late at night was the type of work that the company, single owner, authorized the employee, the owner, to do. That's also, again, a very unique set of facts that's not present here. Just one other clarification, Judge Berzon. You mentioned that a psychologist. Ms. Phillips was not the psychologist. That's Dr. Horton. She is a GS-11 social worker. Why does that matter? I think it matters because a psychologist has more of the transference. Benavidez talked about a psychologist and the duty to avoid the transference. A social worker, and again, we don't know. That goes to whether she did violate her professional responsibility, right? It would go to that, and that's not before the court, and it's not something the district court found, but I do think it's an important distinction that we don't know what a GS-11 social worker was authorized to do because the plaintiff left that open for the district court to guess at, and applying the solid text summary judgment standard, the district court wasn't obligated to go find and search evidence. There's no evidence in the complaint about the scope of employment, and that's fine. Holy See says that you don't have to plead any evidence to meet the basic notice pleading standard, but on summary judgment, the plaintiff was obligated to bring forth some evidence that meet the third Chessman standard, that this was the type of work Ms. Phillips was authorized to do, and they didn't meet that hurdle. Thank you very much. Thank you. Ms. Snyder. Thank you. I know everyone on the panel agrees that no employer ever hires an employee to be professionally negligent, but nevertheless, that is the nature of the claim that we're hearing. Useful pieces of information regarding the record that have not been touched on. Judge Hernandez, in his opinion, did highlight some of the evidence that he found to be persuasive to meet the first and second elements of the Chessman analysis, and he points out that based upon the record that we did submit, which includes an interview with Ms. Phillips, Ms. Phillips admits to having physical contact with the plaintiff at the Veterans Administration during therapy sessions. This physical conduct included one instance of kissing and other instances of touching, even when there was no physical contact, the two sometimes discussed their personal relationship, and he goes on to summarize the evidence that was offered in support of that claim. That being said, I also suggest that the government has overlooked the allegations of the complaint, which in paragraph seven identify the allegations based upon Ms. Phillips' role as a licensed social worker employed by the defendant to provide mental health services, and in paragraph 11, identify that Phillips used her position and influence to induce plaintiff to trust enough. Doesn't Chessman suggest that you need to very clearly focus on what the conduct is that you're trying to say is within the scope of employment, because it first says, you know, the actual assault itself, that's not, but maybe the drugs is, and therefore at least, you know, perhaps the answer here is that what happened in the therapy sessions may be subject to a negligence claim, but the intentional torts outside and the steering wheel on the highway, that that stuff is out? Is that, why would that not be an appropriate resolution? Well, I think, Judge Collins, that resolution would ignore then any analysis which looks at how the position of trust that Ms. Phillips developed with Mr. Kirk during the therapy sessions caused them to engage in this out of therapy conduct, and we have asserted the position of trust was a motivating factor in paragraph 11 of our complaint, and it certainly is consistent, not only... We said in Doe v. See that that was an intentional tort test. You know, and I appreciate the fact that Doe v. See looked at faring from the perspective of faring being an intentional tort, but that gets back to the very first question that Judge Berzon asked me, which is, are there really two different tests in Oregon? And I submit that on reflection, this court should find that there really are not two different tests. What faring really did was to say, look, even if there's intentional conduct, we are going to look at whether or not this meets the third prong of the vicarious liability test, and so it's one test, but it's a test that does not exclude employer liability for conduct that even occurs as an intentional tort. We have not pled an intentional tort, but it gives you an example of why there are not two tests in Oregon, and I am out of time. Thank you very much. Thank you. Thank you. Thank you. Perk v. United States, and go to the second and last case of the day, which is Mendoza v. Strickland.
judges: Berzon, Collins, Choe-Groves